UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2019 MAY 17 P 3:51
U.S. DISTRICT COURT
NEW HAVEN, CT

RAHUL GORAWARA,
*Plaintiff*,

v.

JOHN CAPRIO and,
CAROLYN CAPRIO,
*Defendants*.

Case No. 3:19CV 756(mps)

May 17, 2019

## COMPLAINT

Rahul Gorawara brings this Complaint against John Caprio and Carolyn Caprio and alleges, as follows:

### JURISDICTION & VENUE

1. The United States District Court for the District of Connecticut has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. The Court alternatively has jurisdiction pursuant to 28 U.S.C. § 1332 by reason of the diversity of citizenship of the parties. The matter in controversy exceeds the 28 U.S.C. § 1332 jurisdictional threshold.

3. At all times herein relevant, the Defendants were citizens of the State of Connecticut. The Plaintiff, however, was the citizen of another state, not the state in which the action was brought.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

## RELEVANT FACTS

5. The Plaintiff is a United States citizen.

6. Defendants John Caprio and Carolyn Caprio reside together at 130 Winchester Ave, Unit 10, New Haven, CT 06511.

7. The actions complained of herein were done in the course of the Defendants' business of renting out apartments and collecting debts attributable to such apartments.

8. The Defendants operate their business as natural persons.

9. Upon information and belief, Defendants John Caprio and Carolyn Caprio each hold a fifty percent ownership interest in the tenement house at 152-154 Mansfield Street, New Haven, Connecticut.

10. At all times herein relevant, neither John Caprio nor Carolyn Caprio resided at 152-154 Mansfield Street.

11. The Plaintiff was a tenant in the second floor apartment of 154 Mansfield Street.

12. In October 2016, the Plaintiff alerted John Caprio that sewage was backing up out of the bathroom sink he shared with another tenant.

13. John Caprio together with Carolyn Caprio reacted to this potentially serious health issue by rescinding their offer to renew the Plaintiff's lease and threatening to evict the Plaintiff.

14. Soon after, the Plaintiff learned that John Caprio had encouraged other tenants to take personal property that belonged to the Platiniff from a designated storage area.

15. The Defendants accepted payments from their tenants, including the Plaintiff, via mail.

16. The Defendants required that their tenants, including the Plaintiff, make their payments via check made payable to "John Caprio."

17. The Defendants accepted such checks at "152 Mansfield Street, New Haven, CT 06511."

18. The Plaintiff's rent for November 2016 was mailed on November 2, 2016 via check made payable to "John Caprio" and addressed to the designated mailbox at "152 Mansfield Street, New Haven, CT 06511."

19. The Defendants received the Plaintiff's November 2016 rent check on or before November 7, 2016.

20. The Plaintiff, John Caprio, willfully did not deposit the Defendants' November 2016 rent check.

21. Upon information and belief, the Plaintiff's race, color, national origin, and ancestry were a motivating factor in the Defendants' decisions to subject the Plaintiff to the disparate adverse treatment.

22. The Defendants agreed to notify their tenants, including the Plaintiff, if they do not receive his rent check within a few days after it is due.

23. Neither John Caprio nor Carolyn Caprio notified the Plaintiff that they did not receive his November 2016 rental payment before hiring a state marshal to serve a notice to quit on him on November 14, 2016.

24. John Caprio refused to withdraw his eviction action alleging non-payment of rent if the Plaintiff placed a stop order on his check mailed November 2, 2016 and reissued it.

25. Together with filing to evict the Plaintiff at the next available opportunity, the Defendants privately intimidated him, creating a pervasive fear that he may be the target of violence.

26. John Caprio filed numerous false charges with the New Haven Police alleging, among other things, assault on the sidewalk, changing the locks leading to two apartments, and stealing an abundance of furniture.

27. Although none of these accusations were substantiated by the police and no arrests were made, the Plaintiff lived in fear that he could be arrested at any moment on false and outrageous charges.

28. The Plaintiff reasonably felt that a number of the malicious intimidation techniques employed by John Caprio and Carolyn Caprio demonstrated bigotry or bias based on his actual or perceived race, religion, ethnicity, and/or natural origin.

29. For instance, shortly before a hearing in the eviction action, John Caprio, at the insistence of Carolyn Caprio, intruded into the Plaintiff's house with a tall and fit adult male to mount a big and heavy crucifix to the wall at the entrance of the Plaintiff's apartment using power tools.

30. The floor was covered with debris from the holes they drilled in the wall. John Caprio had sealed the crucifix to the wall, making it impossible to remove.

31. The Plaintiff for good reason feared that the Defendants will retaliate further if he attends his hearing in support of his motion to dismiss the eviction action.

32. The Plaintiff did not attend the hearing in support of his motion because he worried that mounting the crucifix days before the court hearing was a warning that the Defendants retain the keys to the apartment and can send one of their associates to hurt him if he attends.

33. As a direct result, the court summarily denied the Plaintiff's motion without considering its merits. The court order simply stated, "Defendant failed to appear."

34. John Caprio, acting as an agent for Carolyn Caprio, proceeded to evict the Plaintiff based on a default judgment.

35. Both John Caprio and Carolyn Caprio used the eviction as an opportunity to level more false charges with the New Haven Police.

36. Although the police, once again, could not substantiate the false accusation, the Defendants succeeded in enlisting the police's authority to demand that the Plaintiff not park anywhere on Mansfield Street. The police officer acknowledged that the Plaintiff had a valid parking permit but demanded that he leave anyway because the officer did not want to be called anymore by the Defendants.

37. The Plaintiff has suffered emotional distress and mental anguish, embarrassment, humiliation, and intimidation as a result of the Defendants' discriminatory actions.

38. The Plaintiff's distress has been particularly severe, resulting in impairment of his well-being and abilities.

## COUNT I
### (42 U.S.C. § 1982)

39. Paragraphs 5 through 38 are incorporated as though fully stated herein.

40. **COUNT I** is asserted against Carolyn Caprio.

41. The Defendants are Caucasian, while the Plaintiff is not.

42. Upon information and belief, the Plaintiff's race was a motivating factor in Carolyn Caprio's decision to subject the Plaintiff to the disparate adverse treatment.

## COUNT II
### (Private Nuisance)

43. Paragraphs 5 through 38 are incorporated as though fully stated herein.

5

44. **COUNT II** is asserted against Carolyn Caprio.

45. The Plaintiff felt great fear for his safety as a result of Carolyn Caprio's action, which interfered with his ability to peacefully use and enjoy the property.

## COUNT III
### (42 U.S.C. § 3617)

49. Paragraphs 5 through 42 are incorporated as though fully stated herein.

50. **COUNT III** is asserted against Carolyn Caprio.

51. The Plaintiff has sustained direct injuries including, but not limited to, being barred from the full use and enjoyment of the apartment, as guaranteed by the Fair Housing Act.

## COUNT IV
### (42 U.S.C. § 1985)

52. Paragraphs 5 through 42 are incorporated as though fully stated herein.

53. **COUNT IV** is asserted against John Caprio and Carolyn Caprio.

54. The Defendants' actions, together with those of at least one co-conspirator who intruded into the Plaintiff's house, deterred the Plaintiff from testifying in court in the eviction action that John Caprio initiated.

## COUNT V
### (42 U.S.C. § 1983)

55. Paragraphs 5 through 42 are incorporated as though fully stated herein.

56. **COUNT V** is asserted against John Caprio and Carolyn Caprio.

57. On May 17, 2017, the Defendants, acting together, libeled the Plaintiff by falsely reporting to the New Haven Police that the Plaintiff was stealing an abundance of furniture from their apartment.

58. John Caprio knew that this charge was false because he entered the apartment the previous week and knew the supposed furniture was not present.

59. John Caprio in fact scheduled a marshal to evict the Plaintiff that morning and sought to compound the Plaintiff's distress by forcing him to defend the false larceny charge simultaneously.

60. After the police, once again, could not substantiate the false accusation, John Caprio and Carolyn Caprio together began yelling at the officers to arrest the Plaintiff.

61. Carolyn Caprio, in fact, verbally harassed the Plaintiff directly as he was moving out.

62. The Defendants' yelling of falsehoods and derisive comments regarding the Plaintiff drew the attention of neighbors.

63. The Defendants' actions not only damaged the reputation of the Plaintiff, but also affected his well-being.

64. Although the Defendants' attempt to have the the Plaintiff be arrested on false charges failed, they succeeded in enlisting the police's authority to demand that the Plaintiff not park anywhere on Mansfield Street. The police officer acknowledged that the Plaintiff had a valid parking permit but demanded that he leave anyway because he did not want to be called anymore by the Defendants.

## COUNT VI
(CONN. GEN. STAT. § 42-110a et seq.)

65. Paragraphs 5 through 42 are incorporated as though fully stated herein.

66. **COUNT VI** is asserted against Carolyn Caprio.

67. A copy of this Complaint has been sent to the Attorney General and the Commissioner of Consumer Protection.

68. On information and belief, Carolyn Caprio or her agents did not subject tenants similarly situated to the Plaintiff but who did not request a substantial repair to the adverse actions he suffered.

69. Connecticut public policy, via CONN. GEN. STAT. § 47a-20, presumes that the Defendants act with retaliatory motive if they or their agents file to evict their tenants, including the Plaintiff, within 6 months after they in good faith request that they make repairs.

## COUNT VII
### (Negligent Infliction of Emotional Distress)

70. Paragraphs 5 through 42 are incorporated as though fully stated herein.

71. **COUNT VII** is asserted against Carolyn Caprio.

72. Carolyn Caprio engaged in conduct that she should have realized involved an unreasonable risk of causing the Plaintiff emotional distress, impairing his well-being.

## COUNT VIII
### (CONN. GEN. STAT. § 52-571c)

73. Paragraphs 5 through 42 are incorporated as though fully stated herein.

74. **COUNT VIII** is asserted against Carolyn Caprio.

75. Bigotry or bias predicated on the Plaintiff's actual or perceived race, religion, and ethnicity played a key role in Carolyn Caprio's actions.

## COUNT IX
## (Civil Conspiracy)

76. Paragraphs 5 through 42 are incorporated as though fully stated herein.

77. **COUNT IX** is asserted against John Caprio and Carolyn Caprio.

78. Mounting a crucifix to the wall at the entrance of the Plaintiff's apartment is unlawful to the extent it is meant to intimidate.

79. The conspiracy that the Defendants participated in to intimidate the Plaintiff proximately caused humiliation, fear, embarrassment, mental anguish, and emotional distress.

## COUNT X
## (42 U.S.C. § 1981)

80. Paragraphs 5 through 42 are incorporated as though fully stated herein.

81. **COUNT X** is asserted against Carolyn Caprio.

82. Carolyn Caprio has interfered with the Plaintiff's right to contract for rental property without being subjected to discriminatory animus.

## COUNT XI
## (42 U.S.C. § 1983)

83. Paragraphs 5 through 42 are incorporated as though fully stated herein.

84. **COUNT XI** is asserted against John Caprio and Carolyn Caprio.

85. A landlord seeking to recover possession and use and occupancy payments from a tenant has a choice of venue. He can either sue in the Connecticut Superior Court, seeking the traditional remedy under contract law, or he can do as the Defendants did: sue in the Housing Session, seeking the summary process remedy.

86. If the Defendants sued in the Connecticut Superior Court, a jury would have determined all factual questions. Indeed, the Connecticut court in *Peabody International v. Coordination Technology*, 1992 WL 117789, at *7 (Conn. Super. Ct. May 15, 1992) held that parties have a right to a jury trial if the landlord elects to proceed against tenants in the Superior Court.

87. The 1806 statute authorizing special summary process venues for evictions permitted tenants to request a jury trial. Indeed, in 1895, the Connecticut Supreme Court reaffirmed that the right to a jury trial applies to summary process eviction actions. *See Miller v. Lampson*, 66 Conn. 432, 433 (1895).

88. But in 1975, the Connecticut legislature added an exclusion to CONN. GEN. STAT. § 52-215, which deprives all tenants of their constitutional right to a jury trial if the landlord chooses to sue in the Housing Session for the summary process remedy: "[E]xcept that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does not exceed two hundred fifty dollars or in a summary process case."

89. Citing CONN. GEN. STAT. § 52-215, the clerk at the New Haven Housing Session refused the Plaintiff's request to file a jury demand in the summary process action initiated by John Caprio.

90. The US Supreme Court struck down a D.C. eviction statute identical to the Connecticut statute in *Pernell v. Southall Realty*, 416 US 363, 385 (1974), holding that the Seventh Amendment guarantees tenants facing eviction the right to a jury.

91. As the United States Supreme Court wrote in *Pernell,* "Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man is evicted from his home." *Id.* at 384–85.

10

92. The Seventh Amendment civil jury right is incorporated against the states by virtue of the Fourteenth Amendment.

93. Accordingly, the summary process exclusion in CONN. GEN. STAT. § 52-215 violates the Fourteenth Amendment of the United States Constitution.

94. To act 'under color of' state law for § 1983 purposes does not require that the Defendants be officers of the State. It is enough that they were willful participants in joint action with the State or its agents.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

1. Declare the provision in CONN. GEN. STAT. § 52-215 denying all tenants in summary process actions their Seventh Amendment right to a jury trial unconstitutional pursuant to the Fourteenth Amendment of the United States Constitution,

2. Award Plaintiff damages, including, but not limited to compensatory damages, punitive damages, treble damages pursuant to CONN. GEN. STAT. § 52-571, costs and attorney's fees,

3. Such additional relief as law or equity may allow.

BY PLAINTIFF,

*/s/ Rahul Gorawara*

RAHUL GORAWARA
P.O. Box 208200, SOM-PHD
New Haven, CT 06520